IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01690-PAB-SBP

KERRIE VAUGHN,

    Plaintiff,

v.

KIA AMERICA, INC.,

    Defendant.

___

**ORDER REGARDING DISCOVERY BRIEFING (ECF No. 34)**
___

**Susan Prose, United States Magistrate Judge**

This matter comes before this court on the parties' joint discovery brief filed February 3, 2023. ECF No. 34 ("Discovery Brief"). Therein, Defendant Kia America, Inc. ("Kia") argued that in response to its request for production (no. 23, "RFP 23"), Plaintiff Kerrie Vaughn produced extensive medical records from January 2017 forward, but she heavily redacted them and did not provide adequate information concerning those redactions in her privilege log. Kia sought either the complete, unredacted records or this court's in camera review of the redactions. Ms. Vaughn argued to the contrary, that her redactions appropriately protect her privacy interest in medical conditions unrelated to those that she asserts result from the incident at issue.

This court held a discovery hearing on August 18, 2023. ECF No. 63 (minutes). The court noted its strong inclination that RFP 23 sought relevant information that is proportional to the needs of this case. But recognizing Ms. Vaughn's asserted privacy interest against having to disclose to Kia information concerning what she or her counsel believe are medical conditions

unrelated to those that she asserts for damages, the court ordered in camera review. *Id.*

The undersigned Magistrate Judge considers the Discovery Brief pursuant to 28 U.S.C. § 636(b)(1)(A) and the Memorandum dated September 1, 2022. ECF No. 22. The court now rules as follows.

## BACKGROUND

This action concerns claims for products liability and negligence. Complaint, ECF No. 10 ¶¶ 61-75. Ms. Vaughn purchased a 2016 Kia Soul EV that had been distributed for further sale by Kia America. Scheduling Order, ECF No. 24 at 2, 4. As relevant here, she alleges that on May 29, 2020, she put her vehicle's gear shift lever into the "Park" position in her garage. Complaint ¶ 29.

> Plaintiff then exited the Vehicle, closed the driver's door, and walked down her driveway to get a trash receptacle on the street.
> 31. After several seconds had passed, Plaintiff saw the Vehicle slowly rolling backwards out of her garage and down her driveway toward the street.
> 32. Plaintiff ran to open the Vehicle's left front door to try to stop the Vehicle before it rolled out into the street.
> 33. As the Vehicle picked up speed down the driveway, Plaintiff was knocked down by the open left front door, and her head directly impacted the pavement (the "Incident").
> 34. The Vehicle rolled across the street, hit a neighbor's parked vehicle, and then rolled back across- the street, almost hitting Plaintiff a second time.
> 35. Plaintiff was able get out of way to avoid being run over, and got into the Vehicle to stop it until neighbors arrived to help.
> * * *
> 39. As a result of the Incident, Plaintiff was severely injured and required emergency medical treatment.
> 40. As a result of the Incident, Plaintiff sustained a traumatic brain injury with subdural hemorrhage, and suffers from cognitive dysfunction, chronic migraines, and ageusia [(loss of taste)].
> 41. As a result of her injuries, Plaintiff has sought extensive medical care, which continues to this day and is expected to continue through the remainder of her life.

Complaint ¶¶ 30-35, 39-41. Ms. Vaughn seeks damages for "past and future medical and rehabilitation expenses and out-of-pocket expenses, and past and future lost income and loss of earning capacity," and for "future non-economic damages including, but not limited to, pain and suffering; loss of enjoyment of life; inconvenience; and emotional distress." *Id.* ¶¶ 58, 59.[1]

On January 27, 2023, the parties received leave from chambers of Magistrate Judge S. Kato Crews (to whom the case was assigned in the referral role at the time) to file a joint discovery dispute report on issues discussed telephonically that day. ECF No. 33. The parties timely filed the present discovery brief on February 3, 2023. ECF No. 34. As noted, this court held a discovery dispute conference on these issues on August 18, 2023. ECF No. 63 (minutes).

During the August 18 hearing, both sides appeared to agree that Ms. Vaughn's medical record productions ran into the "thousands" of pages. Neither side could elaborate on the total size of these productions. However, Ms. Vaughn's counsel represented that if the court reviewed just the 1,100 records (or pages) that she produced in her initial disclosures, that would give an accurate flavor for the redactions and the medical conditions that counsel deemed unrelated to her claimed damages. Kia's counsel did not object to that course of action.

In the Discovery Brief, Kia notes that Plaintiff alleges a neurological injury leading to the following symptoms:

> 1- Memory; short term and long Memory recollection. I can forget something right away. Whether it's talking, or watching a movie. I have also forgotten family friends. When brought up I have no memory recollection of them.
> 2- Headaches all the time. Sensitivity to chocolate, caffeine, noise, motion, light,

---

[1] Kia denies liability and states several affirmative defenses. ECF No. 8 (answer), No. 24 (Scheduling Order). However, Kia's defenses are not at issue in RFP 23, and the court accordingly does not discuss them here.

and alcohol. Working on a computer for extended amounts of time trigger headaches.
3- Loss of sense of smell & taste
4- Cognitive abilities to multitask, problem solve, answer questions, and I become very fatigued fast.
5- Comprehension difficulties. If there are multiple distractions or even in a single conversation I have a hard time understanding and/or verbalizing clearly due to inability to find words and meanings - especially when under stress.
6- Organizing and follow through of tasks in an organized way due to attention, needing frequent breaks, and ability to think things through.
7- Increased anxiety when needing to go somewhere. I'm afraid I will not be able to handle the situations.
8- Change of personality. Shorter fuse; get irritated more. I don't have certain emotions. I shy away from crying because it will cause intense pain.
9- Financial information confuses me more now. I have to go over things several times to make sure I'm thinking correctly.
10- Learning new things triggers intense pain from trying to concentrate and figuring it out.
11- Neck and back muscle problems that need continued therapeutic interventions and seeking out alternative therapeutic solutions to pain for some normalcy to life.
12- Overall my quality of life has decreased significantly due to the inability to just live without pain, fear of pain, and constant worry of my fast pace decline. My life has drastically changed and in the two years of implied recovery it has only gotten worse.

Discovery Brief at 4-5.

Kia argues that although Ms. Vaughn provided a privilege log, the redactions are extensive, and the log does not identify either diagnoses or medications prescribed for the conditions that Ms. Vaughn's counsel redacted as allegedly unrelated to this case. Kia further notes (and Ms. Vaughn does not disagree) that Ms. Vaughn asserts the Incident caused a wide range of cognitive or neurological symptoms. Kia argues that a wide range of medical conditions (both pre- and post-Incident) could cause or contribute to those symptoms.

Ms. Vaughn's counsel argued that he reviewed the medical records and did not redact

4

any mentions of headaches or the other symptoms that Ms. Vaughn asserts were caused by the Incident. He redacted medical conditions that, in his view, are unrelated to those symptoms. Per Kia, Ms. Vaughn's second privilege log identifies several conditions that Plaintiff redacted as unrelated: "past problems with her upper gastrointestinal tract (including oral thrush, gastritis, GERD, nausea, pharyngitis, esophagitis, throat cultures, EGD/upper endoscopy), 'fatigue panels,' hypothyroidism and associated treatment, and [a] past history of smoking." Discovery Brief at 3.[2]

Plaintiff's counsel argues that Ms. Vaughn has a privacy interest in her medical records and as to unrelated conditions and treatments, she has not waived that privacy interest by bringing this lawsuit. Counsel recognizes that a protective order governs the use of confidential information in discovery (ECF No. 29), and that Ms. Vaughn can designate all of her medical records as confidential. But, as counsel noted, that order does not govern how designated information will be handled at trial. Ms. Vaughn's concern that Kia will seek to introduce at trial her medical records concerning unrelated conditions appears to be the key reason that she redacted these productions and did not agree to narrow the redactions.

## LEGAL STANDARDS

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of permissible discovery in this action. The Rule permits discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P.

---

[2] The Discovery Brief is filed publicly, and the court accordingly understands Ms. Vaughn does not assert privacy or confidentiality as to these (and other) high-level descriptions of conditions that she asserts are irrelevant.

26(b)(1). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Fed. R. Evid. 401. In defining the scope of appropriate discovery, the parties and the court are directed to consider the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1).

"Relevance is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." *Carlson v. Colorado Ctr. for Reprod. Med.*, LLC, 341 F.R.D. 266, 277 (D. Colo. 2022) (quotations omitted). "The party seeking production has the initial burden of showing relevance." *Id.*

"The court may, for good cause, issue an order to protect a party . . . from annoyance, embarrassment, oppression, or undue burden" from an otherwise relevant discovery request. Fed. R. Civ. P. 26(c)(1). "The party seeking a protective order has the burden of proof." *Stroup v. United Airlines, Inc.*, No. 15-cv-01389-WYD-CBS, 2016 WL 7176717, at *3 (D. Colo. Sept. 16, 2016).

The Tenth Circuit recognizes a "privacy interest inherent in personal medical information." *United States v. Dillard*, 795 F.3d 1191, 1205 (10th Cir. 2015) (citing *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.,* 663 F.3d 1124, 1135–36 (10th Cir. 2011); *Russell v. Lanier,* 404 F. App'x 288, 289 n.2 (10th Cir. 2010)).

In addition, this is a diversity case, and as such, the court applies the forum state's law of

privilege. Fed. R. Evid. 501. "Colorado's physician-patient privilege prevents a physician, surgeon, or registered nurse from being examined as a witness as to any information acquired in and necessary to treating a patient without the consent of the patient." *Cardenas v. Jerath,* 180 P.3d 415, 423 (Colo. 2008) (citing Colo. Rev. Stat. § 13-90-107(1)(d) (2007)). "This privilege applies equally to pretrial discovery as it does to in-court testimony. Thus, the physician-patient privilege protects certain information from discovery even if the information is relevant to the subject matter of the case and would be discoverable otherwise." *Gordon v. Rice*, No. 13-cv-00514-RBJ-MEH, 2014 WL 903205, at *3 (D. Colo. Mar. 7, 2014) (cleaned up, citing *Cardenas*, 180 P.3d at 424; *Weil v. Dillon Cos., Inc.,* 109 P.3d 127, 129 (Colo. 2005); *Alcon v. Spicer,* 113 P.3d 735, 738 (Colo. 2005)). This privilege can be waived:

> The physician-patient privilege is designed to protect the patient, and the patient may waive such protections, thereby consenting to disclosure. One way a party waives the physician-patient privilege is by injecting his or her "physical or mental condition into the case as the basis of a claim or an affirmative defense." This waiver does not amount to a general disclosure of the patient's entire medical history, but rather is limited to the cause and extent of the injuries and damages claimed. . . . *[See] Alcon,* 113 P.3d at 740) (noting that where records sought are unrelated to treatment of mental or physical issues arising out of the injuries claimed, the privilege is not waived and the records were not ordered disclosed). Accordingly, relevance alone cannot be the test for waiver of the physician-patient privilege.

*Gordon*, 2014 WL 903205, at *4 (cleaned up, citing *Cardenas,* 180 P.3d at 424; *Alcon,* 113 P.3d at 739-40; *Clark v. Dist. Ct.*, 668 P.2d 3, 10 (Colo. 1983); *Weil,* 109 P.3d at 131).

"Discovery rulings are within the broad discretion of the trial court, and [the Tenth Circuit Court of Appeals] will not disturb them absent a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the

7

circumstances." *Kenno v. Colo. Governor's Off. of Info. Tech.*, No. 21-1353, 2023 WL 2967692, at *7 (10th Cir. Apr. 17, 2023), *petition for cert. docketed* (brackets and internal quotation marks omitted, citing *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1386 (10th Cir. 1994)); *see also S.E.C. v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010) (discovery rulings are reviewed for abuse of discretion).

## ANALYSIS

At the August 18, 2023 hearing, Ms. Vaughn did not contest either relevance or proportionality for her medical records that relate or refer to any of the symptoms she asserts result from the Incident. She contests the relevance of her medical records only as to exams, conditions, and treatments that in her view are unrelated to the symptoms at issue. She argues for instance that "[i]t is undisputed that Plaintiff is not making any claims associated with her prior gastrointestinal problems, breast tumors, hysterectomy, gallbladder removal, or thyroid. She suffered an objective brain injury and the traumatic damage to her brain is causing ongoing problems that are still being treated by her neurologist." Discovery Brief at 9.[3] Ms. Vaughn argues that she has a privacy interest in her medical information, and that she has not waived that interest—at least as to unrelated conditions—by bringing this lawsuit. Ms. Vaughn argues that "[f]rom a 'privacy viewpoint,' redactions of unrelated medical conditions are routine and entirely appropriate." *Id.* at 9 (citing *Niles v. Rodman*, No. 15-cv-00296-RM-MJW, 2016 U.S. Dist. LEXIS 22210, at *8, 2016 WL 641696, (D. Colo. Feb. 18, 2016)).

---

[3] The Discovery Brief is filed publicly, and the court accordingly understands Ms. Vaughn does not assert privacy or confidentiality as to these high-level descriptions of conditions that she asserts are irrelevant.

8

In *Niles*, Magistrate Judge Watanabe adopted a special master's report on in camera review, finding most of the plaintiff's redactions of his medical records were "proper." However, the special master also noted:

> "[T]he lion's share of the redactions, although proper, were not really necessary. Many entries for highly private matters (e.g. page after page of bowel and urinary function notations) were not redacted, yet less private issues (e.g. skin rashes and the medications required to treat them) were redacted. Ironically, many of the notations in the privilege log were more descriptive than what was redacted in the medical records. **From a hypersensitive privacy viewpoint, Plaintiff was correct in making most, if not all, of the redactions; from a financial viewpoint, the redactions were a waste of time and money.** Not only did someone have to painstakingly go through the records to make the redactions at great expense, the litigation over the redactions (including the need for the Special Master and the amount billed for the record review and this Order), has been expensive. Virtually nothing in all of the redactions would have been of interest to Defendant or useful by either side at trial.

*Niles*, 2016 WL 641696, at *3 (emphasis added). Ms. Vaughn's objection to RFP 23 also points to Colorado's physician-patient privilege. Discovery Brief at 3 (citing *Alcon*, 113 P.3d 735, and *Johnson v. Trujillo,* 977 P.2d 152 (Colo. 1999) (plaintiff alleging mental suffering in automobile negligence action did not impliedly waive her physician-patient and psychotherapist-patient privileges as to psychiatric treatment and marriage counseling records)).

Kia does not contest that individuals have a privacy interest in their medical or health information generally, but it argues that Plaintiff's redactions are quite extensive and her privilege log does not give enough information for Kia to determine whether the conditions are actually unrelated to Ms. Vaughn's claimed injuries in this case. Kia notes that Ms. Vaughn's counsel is not a medical doctor qualified to decide which of her medical conditions are unrelated to the symptoms that she alleges as injuries here. As noted above, Ms. Vaughn asserts a broad

9

range of neurological, cognitive, and physical symptoms result from the Incident—and a broad range of medical conditions could cause or contribute to many or most of those symptoms, for instance, chronic headaches.

In support of its request for in camera review, Kia cites *Gordon*, 2014 WL 903205, at *5. *See* Discovery Brief at 6 n.3. That case concerned a truck accident in which the plaintiff alleged she suffered a "number of injuries," including "concussion, memory loss, delayed cognitive response and headaches," and "*petit mal* seizures, loss of balance and coordination, vertigo," as well as injuries to her arm, shoulder, hip, thigh and knee. *Id.* at *1-2, 4. Judge Jackson had ordered the plaintiff to "produce all medical records related to treatment of the injuries and any pre-existing similar injuries. The Court will view her obligation to produce medical information broadly." When the plaintiff withheld some of her medical records as privileged under Colorado law, Judge Jackson granted the defendant's motion for in camera review and referred the dispute to Magistrate Judge Hegarty. *Id.* at *1-2. After his in camera review of the withheld documents, Judge Hegarty "conclude[d] that the majority of them are protected by the physician-patient privilege and are unrelated to treatment of mental or physical issues arising out of the injuries claimed in this case." *Id.* at *4. He therefore denied the defendant's request for those documents.

Meanwhile, in a case that neither side appears to cite, a plaintiff alleging similarly extensive damages (mental anguish, permanent impairment, pain, suffering, and loss of enjoyment of life) from physicians' alleged failure to properly treat a thoracic tumor, sought a protective order against the defendants disclosing the plaintiff's numerous "unrelated, irrelevant medical conditions." *Hixson v. United States*, No. 09-cv-00495-MSK-MEH, 2009 WL 1976016, at *1 (D. Colo. July 8, 2009), *order clarified,* 2009 WL 2358923 (D. Colo. July 30, 2009).

Magistrate Judge Hegarty ruled:

> Although some of the medical treatment that Plaintiff has received in recent years may have little or nothing to do with her current case, she certainly has suffered from medical conditions that may impact both her longevity and such intangibles as pain and suffering and enjoyment of life. It is not practical to rule on Plaintiff's Motion by engaging in an ailment-by-ailment analysis, particularly when many of the medical records likely contain information about multiple conditions that the Plaintiff has suffered. Therefore, the better practice is to require production of all medical records for a reasonable time period and police their dissemination through an appropriate protective order.

*Hixson*, 2009 WL 1976016, at *1 (note omitted).

In this case, the court has thoroughly reviewed Ms. Vaughn's redactions in the over 1,100 pages of medical records she produced in her initial disclosures. In light of the plethora of symptoms and ailments Ms. Vaughn attributes to the accident, the court concludes that her medical records are over-redacted and deprive Kia of access to information that could be relevant to its ability to show potential alternate causes for Ms. Vaughn's purported injuries and symptomatology. In particular, Ms. Vaughn's surgical and other medical history, lists of her medications, lists of symptoms she was experiencing at the time of her various encounters with medical personnel (including lists of "integrated symptoms"), and the full scope of her medical conditions and the treatments she received for them (including for conditions that may predate or are otherwise not directly related to the accident) may expose other possible causes of the alleged injuries and symptoms for which she seeks to hold Kia liable. These are complex matters that medical experts—not this court or counsel for Ms. Vaughn—are in a position to evaluate. This court will not prejudge the relevance of this information by characterizing these materials as "unrelated" to the issues at hand, as Ms. Vaughn has done in her privilege log. *See Kubie v.*

*Target Corp.*, No. 09-cv-00669-ZLW-KMT, 2009 WL 5216943, at *4 (D. Colo. Dec. 30, 2009) (requiring the plaintiff to produce the complete set of medical records, unredacted, and expressing "substantial doubt that Plaintiff's counsel should be the gatekeeper of medical information"). Neither does the court deem it appropriate to preclude Kia from accessing this potentially relevant information.

The court therefore directs that Ms. Vaughn's medical records shall be produced to Kia in their entirety, in unredacted form and subject to the protective order in this case, **with these exceptions**: references to the medical history of members of Ms. Vaughn's family may remain redacted, as may information concerning contact between Ms. Vaughn's counsel and her medical providers and information concerning insurance (i.e., payments, adjustments, and amounts billed versus paid).[4] Ms. Vaughn is correct that the protective order governing confidential discovery does not address how her medical records will be treated at trial, if they are admitted as exhibits. However, that issue is best addressed by redactions of the documents that will actually be offered as trial exhibits and not as a preemptive limit on discovery.

The court concludes by noting that its order here is not meant to suggest that all of the information to be unredacted constitutes admissible evidence. The court anticipates that Kia will respect and guard the sensitivity of this information, utilizing the court's procedures for restrictions on public access to docket entries and redacting non-essential medical information from trial exhibits.

---

[4] Because Kia has voiced no objection to the redactions of attorney and insurer communications, the court has not evaluated the legal standards governing such redactions and issues no ruling on that point.

# CONCLUSION

For the foregoing reasons, IT IS ORDERED that Ms. Vaughn's medical records shall be produced to Kia in their entirety, in unredacted form and subject to the protective order in this case, **with these exceptions**: references to the medical history of members of Ms. Vaughn's family may remain redacted, as may information concerning contact between Ms. Vaughn's counsel and her medical providers and information concerning insurance (i.e., payments, adjustments, and amounts billed versus paid).[5]

DATED: January 10, 2024                    BY THE COURT:

                                           _____
                                           Susan Prose
                                           United States Magistrate Judge

---

[5] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 782 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").